```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**PAULA WATKINS, by and through her**
**agent Cinda Chapman, and**
**DONALD WATKINS,**

    **Plaintiffs,**

**v.**                                             **CIVIL ACTION NO. 1:22CV64**
                                                         **(Judge Kleeh)**

**GAYRA LOY JUDY**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND**
**DENYING IN PART DEFENDANT'S MOTION TO DISMISS [ECF NO. 4]**

Pending before the Court is a motion to dismiss filed by the Defendant [ECF No. 4]. The motion is fully briefed and ripe for review. For the reasons discussed herein, the Court **GRANTS IN PART** and **DENIES IN PART** her motion.

                  **I.    PROCEDURAL HISTORY**

On July 5, 2022, the plaintiffs, Paula and Donald Watkins (collectively, "Plaintiffs"), filed a Complaint against the Defendant in the Circuit Court of Taylor County, West Virginia [ECF No. 1-2 at 4-11]. They asserted three causes of action: (1) undue influence, (2) fraud, and (3) financial exploitation of an elderly person. Id. On August 11, 2022, the Defendant removed the case to this Court based on diversity of citizenship [ECF No. 1]. Thereafter, she moved to dismiss the Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 4].

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [ECF NO. 4]**

## II.   FACTUAL ALLEGATIONS

By deed dated February 14, 1992, Paula Watkins ("Mrs. Watkins") received two parcels of land located in Taylor County, West Virginia [EFC No. 1-2 at ¶¶ 9-10].[1] After conveying 6.017 acres to Allen Chenowith and 7.378 acres to Carl and Pamela Moser that same year, Mrs. Watkins retained 4.72 acres of land ("the subject property"). Id. at ¶¶ 11-14.

The Complaint implies that the Plaintiffs reside in a home located on the subject property. Id. at ¶¶ 31-32. Although he is married to Mrs. Watkins, Mr. Watkins has no ownership interest in the subject property. Id. at ¶ 16. On September 12, 2014, the Plaintiffs borrowed $128,136.81 from First Exchange Bank and, to secure the loan, they executed a deed of trust conveying legal title of the subject property to a trustee for the benefit of First Exchange Bank. Id. at ¶¶ 15, 17.

In early 2021, the Defendant, who is Mrs. Watkins's daughter, approached the Plaintiffs about conveying her the subject property. Id. at ¶¶ 18, 51. In exchange, she would serve as their caretaker in their elderly years. Id. at ¶ 31. The Plaintiffs agreed to convey the subject property to the Defendant because they were "elderly and infirm," had fears about caring for

---

[1] The facts are taken from the Complaint and are construed in the light most favorable to the Plaintiffs. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013).

themselves as they grew older, and wished to remain in their home rather than enter a long-term care facility, Id. at ¶¶ 31-33.

They conveyed the subject property to the Defendant through a series of three deeds.[2] Id. at ¶¶ 19-26. On March 24, 2001, the Plaintiffs conveyed the subject property to the Defendant, reserving a life estate and mineral interest. Id. at ¶¶ 19-20. On June 6, 2021, the Plaintiffs executed a deed of correction, including an additional 0.5-acres of land excluded in the first deed. Id. at ¶¶ 21-22. Finally, on June 28, 2021, the Plaintiffs conveyed all of their interests in the subject property to the Defendant, including their life estate and mineral interests. Id. at ¶¶ 23-24. In each transaction, the Plaintiffs deeded the subject property to a "straw trustee," LaVerne Sweeney, who in turn conveyed the property to the Defendant. Id. at ¶¶ 19-23. Despite containing other provisions, none of these deeds mentioned the Plaintiffs' First Exchange Bank loan. Id. at ¶¶ 25-26. To date, they continue to be responsible for and pay down this loan. Id. at ¶¶ 27-29.

The Plaintiffs allege that the Defendant took advantage of their age and infirmary and unduly influenced them into conveying the property to her. Id. at ¶¶ 32-35. They further allege that she

---

[2] According to the Complaint, both Plaintiffs executed these deeds although Mr. Watkins does not own the subject property.

fraudulently induced them into executing the deeds based on her false promise to care for them and in doing so financially exploited them. Id. at ¶¶ 37-55. Based on her actions, they lost the ownership of their home while remaining responsible for the First Exchange Bank loan associated with the subject property. Id. at ¶¶ 43. They seek treble damages and an order requiring the Defendant to re-convey the property to them. Id. at 10.

### III. LEGAL STANDARD

**A.   Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal upon the grounds that a complaint does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, a court "must accept as true all of the factual allegations contained in the Complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A motion to dismiss under Rule 12(6)(b) tests the "legal sufficiency of a Complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The factual allegations "must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 545. The facts must constitute more than "a formulaic recitation of the elements of a cause of action." Id. at 555.

**B.   Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) includes a heightened pleading standard for fraud claims. "In alleging fraud ..., a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (internal citation and quotation marks omitted). Nevertheless, "[m]alice, intent, knowledge, and other conditions" may be alleged generally. Fed. R. Civ. P. 9(b). "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare

a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Id.

### IV.  DISCUSSION

As discussed below, the Court grants the motion to dismiss with respect to Counts One and Two and denies the motion to dismiss with respect to Count Three. The Court further finds that Mr. Watkins lacks standing and grants the Defendant's motion to dismiss him as a party to this action.

**A.   Count 1: Undue Influence**

The Court grants the motion to dismiss with respect to Count One. The law presumes that a deed is valid, and that the grantor was competent at the deed's execution. Cyrus v. Tharp, 147 W. Va. 110, 121 (1962); Syl. Pts. 5, 7 Van Heyde v. Miller, 239 W. Va. 56 (2017). But fraud, duress, or undue influence will invalidate a deed. Proudfoot v. Proudfoot, 214 W. Va. 841, 846 (2003) (citing 5C Michie's Jurisprudence Deeds § 53 (1998)).

> "To set aside a deed for undue influence, it must appear that the influence was such as wholly to destroy the free agency of the grantor, and to substitute the will of another for his; and unless such taking away of free agency appears, the showing of a motive and an opportunity to exert such undue influence, together with failing mental powers of the grantor, are not sufficient to overthrow the deed."

Syl. Pt. 4 Cyrus v. Tharp, 147 W. Va. 110, 111 (1962).

Undue influence is a fraud-based claim that must be pleaded with particularity. See Van Heyde v. Miller, 239 W. Va. 56, 65

(2017) (comparing undue influence to constructive fraud); Proudfoot v. Proudfoot, 214 W. Va. 841, 846, 591 S.E.2d 767, 772 (2003) (claims of fraud and undue influence must be proven by clear and convincing evidence); see also Sun Life Assur. Co. v. Tinsley, 2007 WL 1052485, at *4 (W.D. Va. Apr. 4, 2007) (Undue influence is "generally regarded as a species of fraud. . . .").

Despite this heightened pleading standard, the Plaintiffs' Complaint contains relatively few factual allegations related to their undue influence claim. It states that the Plaintiffs accepted the Defendant's promise to care for them as they aged because they wished to remain in their home rather than enter an assisted living facility [ECF No. 1-2 at ¶¶ 18-24]. It also alleges that they executed several deeds to effectuate the transfer of the subject property to the Defendant. Id. at ¶¶ 21-32. It then summarily asserts that the Defendant's actions to secure this transfer "destroyed [the Plaintiff's] free will." Id. at ¶¶ 34-35.

The Complaint is devoid, however, of any facts explaining how the Defendant overcame the Plaintiffs' agency in securing the deed to the subject property or how they were incapable of understanding the nature, character, or effect of the challenged transfer. Further, while the Complaint generally states that the Plaintiffs were "both elderly and infirm, making them more susceptible to undue influence," id. at ¶ 33, it does not address what physical

7

or mental ailments the Plaintiffs might have or how these conditions contributed to their alleged vulnerability.

Because the Plaintiffs' undue influence claim is not pleaded with particularity, the Court **GRANTS** the motion to dismiss with respect to Count One.

**B.   Count 2: Fraud**

The Court grants the motion to dismiss with respect to Count Two. Fraud includes "all acts, omissions, and concealments which involve a breach of legal duty, trust or confidence justly reposed, and which are injurious to another, or by which undue and unconscientious advantage is taken of another." Stanley v. Sewell Coal Co., 285 S.E.2d 679, 682 (W. Va. 1981). Actual fraud is an intentional act to deceive another person of that person's property rights. Id. at 682-83. The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; (3) that plaintiff relied on it and was justified under the circumstances in relying upon it; and (4) that he was damaged because he relied on it. Syl. Pt. 5, Folio v. City of Clarksburg, 655 S.E.2d 143 (W. Va. 2007) (cleaned up).

A fraud claim "must ordinarily be predicated on an intentional misrepresentation of a past event," and not on a misrepresentation as to future events or on promissory statements. Croston v. Emax

Oil Co., 464 S.E.2d 728, 732 (W. Va. 1995); see also Janssen v. Carolina Lumber Co., 73 S.E.2d 12, 17 (W. Va. 1952). But an exception to this rule exists under West Virginia law:

> Generally[,] a promise to be performed in the future, and subsequent breach thereof, are not sufficient bases on which to predicate fraud. But an exception to that rule exists where a deed is fraudulently procured by means of a promise which the promisor, at the time of making the same, did not intend to keep, and such promise is the device by which a fraud is perpetrated, the deed so procured may be rescinded at the suit of the person defrauded.

Syl. Pt. 1, Dyke v. Alleman, 44 S.E.2d 587, 589 (W. Va. 1947). In other words, if the Plaintiffs can show that the Defendant did not intend to fulfill a promise at the time it was made "the nonperformance of the promise may constitute fraud." Dyke v. Alleman, 44 S.E.2d 587, 590 (W. Va. 1947).

Here, the Plaintiffs have not pleaded their fraud claim with sufficient particularity to overcome the Defendant's motion to dismiss. The Complaint alleges that at some point between January and March 2021, the Defendant promised to care for the Plaintiffs if they transferred ownership of the subject property to her. It also alleges that the Plaintiffs relied on this promise and transferred the subject property to the Defendant through a series of deeds. Finally, the Complaint states that the Defendant had no intent of fulfilling her promise to the Plaintiffs as evidenced by the disadvantageous financial position she left them in. Although these allegations satisfy several elements of a fraud claim, the

Complaint lacks specific facts related to the Defendant's promise. For instance, it contains no information related whether her promised care was to begin immediately or after some period of time or upon the occurrence of some condition in the future.

Because the Plaintiffs' fraud claim is not pleaded with particularity, the Court **GRANTS** the motion to dismiss with respect to Count Two.

**C.   Count 3: Financial Exploitation of an Elderly Person**

The Court denies the motion to dismiss with respect to Count Three. West Virginia Code § 55-7J-1 et seq. provides a cause of action for the financial exploitation of elderly persons. In relevant part, it states:

> Any elderly person . . . against whom an act of financial exploitation has been committed may bring an action under this article against any person who has committed an act of financial exploitation against him or her by filing a civil complaint for financial exploitation, a petition for a financial exploitation protective order, or both.

W. Va. Code § 55-7J-1(a). This statute defines an "elderly person" as anyone aged sixty-five (65) or older. Id. at § 55-7J-1(b)(2). It also defines "financial exploitation" as "the intentional misappropriation or misuse of funds or assets or the diminishment of assets due to undue influence of an elderly person." Id. at § 55-7J-1(b)(3). Good-faith efforts to assist an elderly person with the management of their money or property are not punishable. Id.

Case 1:22-cv-00064-TSK   Document 10   Filed 12/19/22   Page 11 of 16   PageID #: 130

**WATKINS ET AL. V. JUDY**                                                                 **1:22CV64**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [ECF NO. 4]**

Upon a finding that an elderly person has been financially exploited, the Court may order the return of the property improperly obtained and may award actual damages for any damages incurred or the value of the property lost. Id. at § 55-7J-3(a). In addition, the Court may order two times the amount of damages incurred or value of property lost for violations committed by a person who is not in a position of trust and treble damages for violations committed by a person in a position of trust. Id. at § 55-7J-3(b). The financial exploitation statute also permits injunctive relief. Specifically, the Court may enter a protective order, enjoin further financial exploitation, or freeze the assets of the person who has allegedly committed an act of financial exploitation. See id. at § 55-7J-1, 55-7J-5.

Here, the Defendant contends that § 55-7J-1 et seq. permits only three specific legal claims" by an elderly person alleging financial exploitation: "(1) an action for a protective order (Section 55-7J-1); (2) an action for injunction against further exploitation (Section 55-7J-5(a)); and/or (3) an action for an order freezing assets of the Defendant (Section 55-7J-5(a))" [ECF No. 7 at 5]. Accordingly, because the Plaintiffs have not requested one of these three forms of relief and because the alleged act of exploitation occurred in the past, the Defendant argues that they

have failed to state a claim for financial exploitation [ECF No. 5 at 11-12].

The Defendant's reading of § 55-7J-1 et seq., is plainly incorrect. The statute explicitly authorizes individuals to file a civil action or a petition for a protective order, or both. Id. at § 55-7J-1. It also permits the Court to compensate victims for past acts of financial exploitation. Id. at § 55-7J-3. Specifically, the Court may award monetary damages or order the return of the property, the exact relief requested by the Plaintiffs here. Nowhere does the statute indicate that these monetary remedies are only available in cases where the Plaintiff has filed a civil action seeking injunctive relief. Thus, because the financial exploitations statute clearly envisions the type of claim asserted by the Plaintiffs in this case, the Court **DENIES** the motion to dismiss with respect to Count Three.

D.  **Mr. Watkins Lacks Standing**

The Court also grants the motion to dismiss Mr. Watkins as a plaintiff in this action. The Defendant asserts that Mr. Watkins lacks standing because he has no ownership interest in the subject property [ECF No. 5 at 12]. The Plaintiffs, however, contend that he has an interest in the outcome of this action as a resident of the subject property and as Mrs. Watkins's husband and potential heir [ECF No. 6 at 13-14].

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [ECF NO. 4]**

To have standing, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The burden to establish standing is on the party asserting it. Id. at 560-61.

The causes of action brought by the Plaintiffs and the type of damages sought are conclusive on this issue. Each of the Plaintiffs' claims arise from the transfer of the subject property to the Defendant. As such, they seek monetary damages to compensate them for the Defendant's actions in obtaining title as well as a return of the subject property. But, as pleaded in the Complaint, Mr. Watkins has no ownership interest in that property [ECF No. 1-2 at ¶ 16]. As such, he could not have been damaged by its transfer to the Defendant and has suffered no injury in fact redressable by this Court.

Even if, as the Plaintiffs contend, Mr. Watkins might obtain some interest in the subject property in the future should it be returned to Mrs. Watkins and should she die intestate or should the Plaintiffs divorce, such abstract and hypothetical injury is insufficient to confer standing upon him in this case. See Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 216-27, (1974) (a plaintiff's injury—whether past or future—must

be "concrete" and not "abstract"); Lujan, 504 U.S. at 560, (injury must not be "conjectural or hypothetical").

Nor does his residential status establish standing in this case. While Mr. Watkins purports to have "a legally protected right to know his living status and whether the Defendant actually owns the property where he resides," he cites no authority for this proposition. His lack of ownership interest in the property deprives him of standing to challenge its transfer to the Defendant. Therefore, the Court **GRANTS** the motion to dismiss Mr. Watkins as a plaintiff in this action.

**E. Leave to Amend**

In their response to the Defendant's motion to dismiss, the Plaintiffs request leave to amend their Complaint should the Court find their pleading to be insufficient [ECF No. 6 at 8-10]. The Defendant opposes this request as procedurally deficient [ECF No. 77 at 6-8]. For the following reasons, the Court denies the Plaintiffs' request.

Although the Plaintiffs could have amended their Complaint once as a matter of course, their opportunity to do so has passed. See Fed. R. Civ. P. 15(a)(1). Now, they may amend their Complaint only with written consent of the Defendant or leave of the Court. Fed. R. Civ. P. 15(a)(2). While the Court recognizes that it should

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [ECF NO. 4]**

freely give leave to amend "when justice so requires," id., the Plaintiffs have not properly requested such relief in this case.

A response brief to a motion to dismiss is not an appropriate means to request leave to amend a complaint. See Francis v. Giacomelli, 588 F.3d 186, 197 (4th Cir. 2009). Federal Rule of Civil Procedure 7(b)(1) provides that "[a] request for a court order must be made by motion." Likewise, under Local Rule of Civil Procedure 15.01, a party seeking leave to amend a pleading must submit a motion requesting such relief and attach the proposed amended pleading.

> "[W]here, as here, the plaintiff fails to formally move to amend and fails to provide the district court with any proposed amended complaint or other indication of the amendments he wishes to make, the district court does not abuse its discretion in failing to give the plaintiff a blank authorization 'to do' over his complaint."

Estrella v. Wells Fargo Bank, N.A., 497 F. App'x 361, 362 (4th Cir. 2012) (citing Francis, 588 F.3d 186, 197 (4th Cir. 2009) (internal alterations omitted). Because the Plaintiffs have not formally moved to amend their Complaint and have not provided a proposed amendment, the Court denies their request for leave as procedurally deficient.

### 1. CONCLUSION

For the reasons discussed, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendant's motion to dismiss [ECF No. 4]. If Mrs.

Watkins wishes to file a motion to amend her Complaint, she must do so **within thirty (30) days.**

It is so **ORDERED.**

The Clerk **SHALL** transmit copies of this Order to counsel of record by electronic means.

DATED: December 19, 2022

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA